**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

|  |  |
|---|---|
| **ANDREA M. EDRWIN,** | ) |
| Plaintiff, | ) |
| v. | ) CIVIL NO. 3:09CV679 |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social Security,** | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Andrea M. Edrwin, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for Social Security Disability ("DIB") and Supplemental Security Income payments ("SSI"). The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 9) and motion to remand (docket no. 10) be DENIED; that

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

Defendant's motion for summary judgment (docket no. 14) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI and DIB on September 9, 2005, claiming disability due to depression, panic attacks, asthma, and anemia, with an alleged onset date of February 1, 2002. (R. at 103, 123, 175.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 79-83; 64-73, 549-60.) On March 11, 2008, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 575-602.) On April 10, 2008, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act where, based on her age, education, work experience and residual functional capacity, there are jobs she could perform which exist in significant numbers in the national economy. (R. at 34-36.) The ALJ granted Plaintiff's request for review, and Plaintiff testified at a second hearing before the ALJ. (R. at 87-89, 603-19.) Plaintiff also filed a new SSI claim on July 11, 2008, which was incorporated into the ALJ's review. (R. at 87-89.) The ALJ denied Plaintiff's applications a second time on April 27, 2009, again finding that she was not disabled under the Act where, based on her age, education, work experience and residual functional capacity, there are jobs she could perform which exist in significant numbers in the national economy. (R. at 12-25.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 4-9.)

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has

made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[4] based on an assessment of the claimant's residual functional capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform her past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of her disability. (R. at 17.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of osteoarthritis and a major depressive disorder, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 17-20.) The ALJ next determined that Plaintiff had the RFC to perform light work, specifically that she could lift twenty pounds occasionally and ten pounds frequently; stand/walk for six hours in an eight-hour workday; and sit for six hours in an eight-hour workday, such that she was limited to simple, unskilled work with limited contact with the general public due to her impairments. (R. at 20-22.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform her past relevant work as a certified nursing assistant because of the level of exertion required for such employment. (R. at 22.) At step five, after considering Plaintiff's age, education, work experience and RFC, and after consulting a VE, the ALJ nevertheless found that there are other

occupations which exist in significant numbers in the national economy that Plaintiff could perform. (R. at 23.) Specifically, the ALJ found that Plaintiff could work as an office helper, an order caller, a warehouse checker, a productions inspection/grader, an addresser, or a garment folder. (R. at 23.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that she was not entitled to benefits. (R. at 23-24.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the alternative, she seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of her position, Plaintiff argues that: (1) the ALJ improperly evaluated Plaintiff's mental RFC; (2) the ALJ did not evaluate Plaintiff's subsequent SSI claim filed on July 11, 2008; (3) the ALJ erred by posing an insufficient hypothetical to the VE; (4) the ALJ erred by failing to have a consultative examiner perform objective standardized testing; (5) the ALJ did not properly evaluate the evidence provided by Plaintiff's treating physician; and (6) the ALJ did not adequately consider Plaintiff's panic disorder. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 3-6.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 16-29.)

**A.     The ALJ properly evaluated Plaintiff's mental RFC.**

Plaintiff argues that the ALJ's assessment of Plaintiff's mental RFC is essentially the same as the inadequate assessment in his first decision denying benefits, which was one of the reasons the Appeals Council remanded the case. (Pl.'s Mem. at 2-3.)

In assessing Plaintiff's mental RFC, the ALJ relied on medical evidence, opinion

evidence, and statements made by Plaintiff concerning her activities, symptoms, and limitations. (R. at 20-22.) The ALJ found that, nonexertionally, Plaintiff is limited to simple, unskilled work with limited contact with the general public due to her impairments. (R. at 20.)

Plaintiff last worked in July of 2003. (R. at 20, 103, 213-18.) Though the employment did not rise to the level of SGA, the evidence could still be considered to demonstrate that a claimant is able to perform more work than the claimant did perform. 20 C.F.R. §§ 404.1571, 416.971; (R. at 20.) In Plaintiff's testimony and written statements, she reported that her condition had worsened over time; she had problems with concentration and memory due to her depression and anxiety with panic attacks; she experienced sleep disturbance (though she took medication for sleep); she experienced daily crying spells and fatigue; and she heard voices that told her to do bad things, including hurting herself. (R. at 20-21, 148-48, 590, 598-99, 608-14.) Plaintiff also reported mood swings with anger about various situations in her life, but that she was trying to cope with such issues. (R. at 21, 126.)

Plaintiff also stated that she prepared meals and took care of her personal needs; she spent her time at home unless she had to go out; she stayed in her night clothes most days; she left her home approximately three times a week (but felt nervous and her heart raced before doing so); she missed appointments at her daughters' schools due to symptoms of panic; her daughters had to help her shop; but, at the same time, she was able to drive and use public transportation without assistance; she went to church; she made crafts and played card games; she visited with family and friends; she read; she handled her own money and paid bills in a timely manner; and she participated in GED classes. (R. at 21, 118-21, 163-69, 195, 509-91, 600, 610-14.)

8

The ALJ found Plaintiff to be not entirely credible, as her statements and testimony about her limitations were inconsistent when compared with her treatment and her response to such treatment. (R. at 21.) The ALJ noted that there was no evidence presented at the hearing of an inability to sustain attention and concentration; however, Plaintiff did change her response to questions when asked the same question a second time. (R. at 21.) For example, Plaintiff first testified that she did not hear any voices, but then later said she heard them all of the time. (R. at 21, 608-09, 612-13.) The ALJ also noted that treatment notes indicate that Plaintiff's stressors focused on male relationships, finances, and problems with her daughters. (R. at 21, 238-41, 246, 253-54, 264.) The ALJ also noted that there was no evidence of inability to get along with others, including supervisors and coworkers, and there were no problems with the law, firings, avoidance of interpersonal relationships, or social isolation. (R. at 19.) The ALJ further noted that Plaintiff's mental health notes did not reflect symptoms of fear, dread, or marked distress; or an inability to function independently outside the area of her home. (R. at 21.)

The ALJ also found that relevant treatment records indicate that Plaintiff's symptoms were progressively improved with medication and therapy. (R. at 22, 239, 264, 299, 532-33.) The ALJ further noted that in 2006 Plaintiff was seeking work and had only slight symptoms of depression and anxiety, and any other symptoms of depression were only evidenced by her crying. (R. at 22, 246, 255, 257-58.) The record also indicates that Plaintiff had been depressed since 2000, but that she had no significant treatment except occasionally obtaining medications from her primary care physician, who was not a mental health professional. (R. at 22, 373.) Also, Plaintiff worked after her alleged onset of disability (though the work was not classified as SGA), and participated in GED classes. (R. at 22, 213-18, 220, 239.) The ALJ finally noted that

9

Plaintiff had no major limitations in the ability to function overall; and, therefore, Plaintiff did not have an inability to maintain sustained physical or mental activity. (R. at 22.)

Treatment records support the ALJ's evaluation of Plaintiff's mental RFC. Specifically, records indicate that Plaintiff did not obtain treatment for her alleged mental impairments until July of 2005, three years after her alleged onset date. (R. at 373.) Dr. Koduru, a psychiatrist, initially rated Plaintiff's depression at a "3" on a scale of one to ten and assigned her a Global Assessment of Functioning ("GAF") score of 60, which is reflective of borderline moderate/mild symptoms. (R. at 375-76.) In August of 2005, Plaintiff's depression had increased to a 7 out of 10, but she reported that Xanax was helping her deal with anxiety. (R. at 370.) Plaintiff told a psychotherapist, licensed clinical social worker (LCSW) Laverne Taylor, in that same month that she experienced anxiety attacks, but she was able to identify contributors, and there was no evidence of abnormal thoughts. (R. at 366, 369.) Thereafter, in November of 2005, Dr. Koduru noted that Plaintiff's anxiety and depression were under control and improving. (R. at 299.)

In January of 2006, Dr. Koduru indicated that Plaintiff's depression was better, that she slept "ok," and that her appetite was "good." (R. at 270.) On May 8, 2006, Plaintiff was tearful and reported increased stress to LCSW Taylor, but on May 25, 2006, treatment notes indicate that Plaintiff had no evidence of increased depression and was trying to work to feel less depressed. (R. at 257-58.) In July of 2006, Plaintiff was again tearful and reported to LCSW Taylor a poor appetite and an inability to sleep at night. (R. at 255.) It was also noted during that session that Plaintiff was without her prescribed medications. (R. at 255.) In August of 2006, treatment notes indicate that Plaintiff was less depressed; had no evidence of abnormal thoughts; and was able to address contributors, with finances being her primary stressor. (R. at

10

253-54.) Plaintiff was also noted to be in a better mood in the next appointment on September 26, 2006. (R. at 252.) Treatment notes for October of 2006 to January of 2007 indicate that Plaintiff was either less depressed, or had no increased depression, and did not exhibit any abnormal thoughts. (R. at 247-57.) In February of 2007, Plaintiff experienced distress about a financial transaction at the bank, but she did not express abnormal thoughts. (R. at 246.) On April 19, 2007, treatment notes indicate that Plaintiff's stress level was the same, and that she had no abnormal thoughts or increased depression. (R. at 243.) On June 12, 2007, Plaintiff expressed concern over legal matters, but she had no abnormal thoughts or increased depression. (R. at 241.) On August 30, 2007, Plaintiff was reported to have been calm and in good spirits, though she had concerns about finances and her children returning to school. (R. at 240.) On October 9, 2007, Plaintiff was in a "good mood" and was "excited" about beginning GED classes. (R. at 239.) LCSW Taylor noted that Plaintiff had some stressors, but seemed to be "managing well." (R. at 239.) Plaintiff also reported to Dr. Koduru that her depression and anxiety were improving. (R. at 264.) In sum, Plaintiff seemed to be experiencing increased stressors, but there was no evidence of increased depression. (R. at 238.)

Though most of Dr. Koduru's treatment notes are essentially indecipherable, he did legibly note on March 17, 2008 that Plaintiff was "doing well." (R. at 533.) On January 8, 2009, Dr. Koduru also noted that Plaintiff's anxiety had improved and her depression was better. (R. at 532.)

The treatment notes further indicate that Plaintiff occasionally experienced symptoms of anxiety and depression. However, the notes also indicate that Plaintiff's depression was not so severe as to preclude her from being able to maintain employment. The consistent theme

11

expressed in the notes is that though Plaintiff experienced difficult periods, she also experienced times when her depression had improved, and she was in a "good mood," or "excited" about her GED classes. Plaintiff's treatment records therefore support the ALJ's conclusion that her mental impairments were not so severe as to preclude all work activity. The opinions of state agency psychological consultants, Drs. Entin and Saxby, also support the ALJ's evaluation of Plaintiff's mental RFC. Dr. Entin reviewed Plaintiff's record in December of 2005, and Dr. Saxby reviewed her record in April of 2006. (R. at 273-88.) Both physicians concluded that Plaintiff was able to meet the basic mental demands of competitive work on a sustained basis, despite the limitations resulting from her mental impairments. (R. at 288.)

Furthermore, Plaintiff's contention that the ALJ's evaluation of Plaintiff's mental RFC was the same evaluation that "had already been found woefully insufficient by the AC [Appeals Council] remand order" is not persuasive. (Pl.'s Mem. at 5.) The AC remand order stated that the ALJ's decision did not further define Plaintiff's mental limitations regarding contact with the general public, and as a result the specific work-related functional abilities that would result from the limitation were unclear. (R. at 88.) The remand order also stated that the ALJ's finding that Plaintiff's mental limitations would have little or no effect on the occupational base of sedentary work was based on an undefined mental limitation and was also unclear. (R. at 88.) The AC simply requested further evaluation of Plaintiff's mental limitations and their impact on the occupational base for sedentary work. (R. at 88.)

It appears from the record that the ALJ complied with the remand order. Specifically, in the second administrative hearing, the ALJ utilized the services of a VE, which he did not do in the first hearing. (R. at 615-19.) The VE testified to jobs that Plaintiff could perform at both the

light and sedentary levels. (R. at 615-19.) Also, in response to questioning from Plaintiff's counsel, the VE clarified "limited contact with the general public" to mean that in the jobs he identified, Plaintiff would have limited interaction, or proximity to, co-workers, but not the general public. (R. at 618.) The VE further explained that Plaintiff would be "around some people" in those jobs. (R. at 618.) The ALJ also more thoroughly evaluated Dr. Koduru's opinions as to Plaintiff's mental limitations, and his reasoning for finding that they would have little to no effect on her ability to work. (R. at 21-23.) Therefore, it appears that the ALJ complied with the remand order, as further evidenced by the AC's denial of Plaintiff's request for review of the ALJ's decision. (R. at 4-9.)

The above evidence provides substantial support for the ALJ's analysis of Plaintiff's mental RFC. Though Plaintiff alleged disabling conditions, her daily activities and treatment records indicate that her issues were not as severe as she alleged. Plaintiff's physicians consistently reported that Plaintiff improved with proper medication and therapy. Therefore, the ALJ's evaluation of Plaintiff's mental RFC is supported by substantial evidence and application of the correct legal standard.

**B.      The ALJ incorporated Plaintiff's subsequent SSI claim into his April 27, 2009 decision.**

Plaintiff contends that the AC remand order of January 9, 2009 required the ALJ to consolidate Plaintiff's subsequent SSI application into his review, and yet the ALJ did not do so. (Pl.'s Mem. at 3.) However, the ALJ explicitly stated in the opening paragraph of his decision that "[Plaintiff] filed a claim for [SSI] benefits on July 11, 2008. The application is hereby associated with the remanded files." (R. at 15.) Therefore, there is no merit to Plaintiff's assertion.

### C. The ALJ posed a proper hypothetical to the VE which included all of Plaintiff's limitations, as found by the ALJ.

Plaintiff asserts that the ALJ did not submit the specific limitations of the non-examining physicians, who's opinions he treated as "expert opinions," in the form of a hypothetical question to the VE as was required. (Pl.'s Mem. at 3.) Plaintiff contends that the ALJ simply reiterated Plaintiff's mental RFC to the VE, which was "undefined" according to the Appeals Council's remand notice. (Pl.'s Mem. at 3-4.) Plaintiff also argues that the ALJ could have cured the deficiency by submitting the mental RFC of the non-examining physicians to the VE, which indicated that Plaintiff had a severe medically determinable panic disorder. (Pl.'s Mem. at 5.)

Though the ALJ's analysis in his first opinion, deemed insufficient by the AC, may have been "undefined," the ALJ cured the defect in his second decision, the decision currently being appealed. (R. at 88.) Indeed, during the second hearing before the ALJ, the ALJ posed two hypotheticals to the VE. (R. at 615-19.) In the first, the ALJ asked the VE to consider someone "the same age as our claimant, a younger individual with less than a high school education, who has the same transferable skills, if any, as our claimant...sedentary, limited to simple, unskilled work with limited contact with the general public." (R. at 616.) The second hypothetical asked the VE to reduce the level of work to the "light exertional level and, again, limited to simple, unskilled work with limited contact with the general public." (R. at 617.) The ALJ's mental RFC determination for Plaintiff limited her to "simple, unskilled work with limited contact with the general public due to her impairments." (R. at 20.) It is clear that the ALJ incorporated the mental RFC assessment, almost verbatim, into both of the hypotheticals posed to the VE. Therefore, there is no merit to the argument that the ALJ posed an incomplete and improper

hypothetical to the VE.

Moreover, Plaintiff's argument that the ALJ should have used the specific limitations found by the non-examining physicians is not persuasive. As noted, the ALJ included in the hypotheticals posed to the VE all of the limitations which he found to have been substantiated. The ALJ was not required to further define Plaintiff's limitations, as found by the non-examining physicians, because those limitations were not included in the ALJ's RFC analysis. Furthermore, although the ALJ treated the nonexamining physicians' opinions as "expert opinions," that does not mean that the ALJ was required to adopt the opinions "word for word" in his RFC analysis. As the ALJ stated, SSR 96-6p requires that the "opinions of state agency medical and psychological consultants be treated as expert opinion evidence from nonexamining sources," but the ALJ "is not bound by the conclusions of these nonexamining sources." (R. at 22.) Therefore, there was no requirement that the ALJ pose the mental RFC, as found by the state physicians, to the VE in the form of a hypothetical.

> **D.** **A consultative examination for objective standardized testing was not necessary.**

Plaintiff further argues that the SSA improperly elected to evaluate Plaintiff's intellectual limitations by using a consultative orthopaedic examination. (Pl.'s Mem. at 4.) Plaintiff also contends that the consultative examiner did not perform standardized testing, "which is usually required when a claim of intellectual insufficiency is alleged." Id.

As Defendant notes in his brief, a consultative examination is appropriate when the claimant's medical sources cannot, or will not, provide sufficient evidence about an impairment to determine whether the claimant is disabled. (Def.'s Mem. at 26.) 20 C.F.R. §§ 404.1517, 416.917. Plaintiff notes that objective standardized testing is "usually required when a claim of

intellectual insufficiency is alleged." (Pl.'s Mem. at 4.) However, Plaintiff's alleged disability was due to depression, panic attacks, asthma, and anemia. (R. at 175.) While it is correct that Plaintiff's disability interviewer noted that Plaintiff may have intellectual limitations, given her special education status in school, there is no indication that Plaintiff suffered from severe intellectual limitations. (R. at 174.) Notably, and as discussed earlier, Plaintiff cared for her children, prepared meals, shopped, drove, managed her finances, paid bills, and attended GED classes. (R. at 21, 118-21, 163-69, 195, 590-91, 600, 610-14.) Further, neither LCSW Taylor nor Dr. Koduru offered an opinion, or even suggested, that Plaintiff had disabling intellectual limitations which required further testing. Therefore, because the decision to order a consultative examination ("CE") is within the ALJ's discretion, and is only appropriate when the record cannot, or will not, provide sufficient evidence regarding an impairment, the ALJ properly acted within his discretion in not ordering a CE to evaluate Plaintiff's intellectual capacity. See Jones v. Bowen, 829 F.2d 524, 526 (5th Cir. 1987); 20 C.F.R. §§ 404.1517, 416.917.

**E.      The ALJ properly evaluated Plaintiff's treating physician's opinion.**

Plaintiff contends that Dr. Koduru should be considered a more significant expert than the non-examining physicians "by sheer virtue of the nature and extent of his treatment relationship with [Plaintiff]." (Pl.'s Mem. at 4.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence

resulting from consultative examinations or medical expert evaluation that have been ordered. See 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultive examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. See 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d). Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005). See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

Dr. Koduru opined in May of 2006 that Plaintiff suffered from depression, anxiety, and a panic disorder. (R. at 233-36.) Dr. Koduru noted that Plaintiff's abilities to deal with work stressors, maintain attention/concentration, and use judgment, were "poor to none." (R. at 233.) Dr. Koduru also opined on October 31, 2006, that Plaintiff had "major depression recurrent moderate" and a panic disorder which rendered her unable to work for "greater than 90 days." (R. at 271.) Dr. Koduru accordingly advised Plaintiff to apply for disability. (R. at 272.)

17

However, the ALJ concluded that controlling weight could not be given to Dr. Koduru's opinion(s). (R. at 22.) The ALJ noted that there was "no evidence of symptoms severe enough to preclude all work activity when compared to [Dr. Koduru's] treatment notes and then compared to the claimant's admitted activities." (R. at 22.) The ALJ also noted that Dr. Koduru's treatment records were fairly consistent with LCSW Taylor's notes in that Plaintiff's symptoms had progressively improved with therapy and medication. (R. at 22.) Further, and as noted earlier, the ALJ found that Plaintiff had only slight symptoms of depression and anxiety in 2006; Plaintiff was seeking work in 2006; Plaintiff had been depressed since 2000 but had no significant treatment apart from occasional prescriptions obtained from her primary care physician, who was not a mental health professional; Plaintiff worked and participated in GED classes during the period in question; Plaintiff had the concentration and attention to engage in card games, read, and handle her finances; and Plaintiff was not hospitalized; nor was there any increase in symptoms or major limitations in her ability to function overall. (R. at 22.)

As to Plaintiff's argument that Dr. Koduru should be considered a more meaningful expert than the non-examining physicians by "sheer virtue of the nature and extent of his treatment relationship" with Plaintiff (Pl.'s Mem. at 4), though the treatment relationship is a factor to be considered in weighing a treating physician's opinion, it is not the only factor to be considered. Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d); SSR 96-2p. The ALJ properly evaluated Dr. Koduru's opinion, and there is substantial evidence supporting his decision that Dr. Koduru's opinion could not be given controlling weight.

**F.     The ALJ properly found that Plaintiff's panic disorder was not severe.**

Plaintiff finally asserts that although Dr. Koduru had consistently indicated that Plaintiff

had a panic disorder, and the non-examining psychologists indicated that Plaintiff had an anxiety-related disorder, the ALJ improperly failed to mention the condition of panic disorder in his decision denying benefits. (Pl.'s Mem. at 4-5.) Plaintiff therefore contends that such a failure to mention a psychiatric impairment in the analysis renders the analysis insufficient and incomplete. (Pl.'s Mem. at 5.)

However, the ALJ did, in fact, note Plaintiff's allegations of panic attacks several times in his decision denying benefits. Specifically, when discussing Plaintiff's "severe" impairments, the ALJ noted that Plaintiff's progress notes from November of 2005 through December of 2007 noted improvement in her depressive symptoms "with hardly any mention of anxiety with panic attacks." (R. at 18.) The ALJ further noted in his opinion that Plaintiff's panic attacks appeared "controlled with medication since at least November of 2005." (R. at 21.) Symptoms that are controlled by medication or treatment are not disabling. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). The ALJ also emphasized that Plaintiff had not required any hospitalization, not did her mental health notes reflect symptoms of fear, dread, or marked distress; or an inability to function independently outside of her home. (R. at 21.)

In regard to Dr. Koduru's opinion that Plaintiff suffered from anxiety and panic attacks, the ALJ concluded that there was no evidence of symptoms severe enough to preclude all work activity. (R. at 22.) The ALJ noted that Dr. Koduru's treatment records were fairly consistent with LCSW Taylor's in that Plaintiff's symptoms were progressively improved with medication and therapy. (R. at 22.) The ALJ further noted that the evidence reflected work activity and participation in GED classes, and that there had not been an increase in Plaintiff's symptoms "despite non-compliance with medication treatment." (R. at 22.)

19

Accordingly, because the ALJ addressed Plaintiff's alleged panic disorder, and articulated sufficient reasons for his finding that the impairment was "not severe," the ALJ's analysis was proper. There is, therefore, substantial evidence supporting the ALJ's conclusion, which was a result of application of the correct legal standard.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 9) and motion to remand (docket no. 10) be DENIED; that Defendant's motion for summary judgment (docket no. 14) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Henry E. Hudson and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                        /s/
                          DENNIS W. DOHNAL
                          UNITED STATES MAGISTRATE JUDGE

Date: May 21, 2010
Richmond, Virginia